UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X

DANNY RAMIREZ CRUZ GUERRERO and : 
CRISTOPHER ISMAEL RAMIREZ MOREL, on :
behalf of themselves and all others similarly :
situated, :
 :
       Plaintiffs, :  **COLLECTIVE AND**
 :  **CLASS ACTION**
  -against- :  **COMPLAINT**
 :
MONTEFIORE HEALTH SYSTEM, INC. and CSS :
BUILDING SOLUTIONS INC., :  **JURY TRIAL REQUESTED**
 :
       Defendants. :

------------------------------------------------------------------------ X

   Plaintiffs Danny Ramirez Cruz Guerrero ("Cruz") and Cristopher Ismael Ramirez

Morel ("Ramirez") (collectively, "Plaintiffs"), on behalf of themselves and all others

similarly situated, by their attorneys Pechman Law Group PLLC, complaining of

defendants Montefiore Health System, Inc. ("Montefiore") and CSS Building Solutions

Inc. ("CSS") (collectively, "Defendants"), allege:

### NATURE OF THE ACTION

   1.  Plaintiffs were employed as cleaning workers at Montefiore, responsible for

disinfecting, sanitizing, and maintaining patient areas throughout the hospital system.

Despite serving as "essential workers" and putting their health in jeopardy during the

COVID-19 crisis, Defendants failed to compensate Plaintiffs and their co-workers at the

statutorily required overtime wage rate for hours worked over forty per workweek.

Plaintiffs and other cleaning workers at Montefiore often worked over eighty hours per

workweek but were paid at "straight-time" for all hours worked over forty in a week.

Defendants also failed to pay Plaintiffs and other cleaning workers spread-of-hours pay

when they worked shifts in excess of ten hours, failed to provide accurate wage

statements with each payment of wages, and failed to provide wage notices when they

were hired or whenever their rate of pay changed, as required by the NYLL's Wage Theft Prevention Act ("WTPA"). In addition, Plaintiffs and other cleaning workers were "manual workers" who spent more than 25% of their work time performing duties that were physical in nature, yet Defendants unlawfully paid them on a bi-monthly basis, rather than on a weekly basis.

2.      Plaintiffs bring this action on behalf of themselves and all other similarly situated cleaning workers employed by Defendants ("Cleaning Workers") to recover unpaid overtime wages, spread-of-hours pay, liquidated damages, statutory damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), Articles 6 and 19 of the New York Labor Law ("NYLL"), and the New York Wage Theft Prevention Act.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because the events giving rise to Plaintiffs' claims arose at Montefiore Hospital and its satellite facilities, which are located in this district.

## THE PARTIES

**Plaintiff Danny Ramirez Cruz Guerrero**

5.      Danny Ramirez Cruz Guerrero resides in the Bronx, New York.

6.      Cruz worked as a Cleaning Worker at Montefiore and its satellite facilities from November 2017 through September 16, 2022.

**Plaintiff Cristopher Ismael Ramirez Morel**

7.     Cristopher Ismael Ramirez Morel resides in the Bronx, New York.

8.     Ramirez worked as a Cleaning Worker at Montefiore and its satellite facilities from July 2018 to April 2020.

**Defendant Montefiore Health System, Inc.**

9.     Defendant Montefiore Health System, Inc. is a New York corporation.

10.     Montefiore's corporate headquarters and flagship hospital is located at 111 East 210th Street, Bronx, NY 10467.

11.     Montefiore is a health care institution that operates ten member hospitals and more than two hundred outpatient ambulatory care sites that provide comprehensive care for ill, including mentally ill, patients across the Bronx, Westchester, and the Hudson Valley.  Across its network of entities, Montefiore employs over twenty thousand workers and has an annual revenue of over four billion dollars.

12.     Cleaning Workers, including Plaintiffs, were assigned to Montefiore's Hutchinson Campus, Albert Einstein Campus, and other facilities across the New York City metropolitan area.

13.     As an entity that operates various hospitals, Montefiore is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

14.     Montefiore has employees engaged in interstate commerce or in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

15.     In each of the three years preceding the filing of this Complaint, Montefiore's annual gross volume of sales exceeded $500,000.

3

**Defendant CSS Building Solutions Inc.**

16.     Defendant CSS Building Solutions Inc. is a New Jersey corporation.

17.     CSS's corporate headquarters is located at 846 Livingston Avenue, North Brunswick, NJ 08902.

18.     CSS, founded in 1978, is a facilities management company.  It provides a wide range of sanitation and maintenance services to clients throughout the United States.  CSS has entered into contracts to provide hospitals and other institutions, including Montefiore, with cleaning and decontamination services.

19.     CSS is an "enterprise engaged in interstate commerce" within the meaning of the FLSA.

20.     CSS has employees engaged in interstate commerce and in the production of goods for interstate commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person.

21.     In each of the three years preceding the filing of this Complaint, CSS's annual gross volume of sales exceeded $500,000.

**Montefiore and CSS Were Plaintiffs' Joint Employers**

22.     In the six years prior to the filing of this Complaint, Montefiore has contracted with CSS to clean and decontaminate Montefiore facilities throughout the New York City metropolitan area.

23.     Upon information and belief, Montefiore has a contract with CSS that sets out a panoply of rules and instructions for Cleaning Workers at Montefiore, including Plaintiffs, to follow while performing their work duties.

24.     Section 3(d) of the FLSA defines an employer to "include any person acting, directly and indirectly, in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

4

25. Although the Cleaning Workers receive their pay directly from CSS, Montefiore provides mandatory direction to CSS with respect to where, when, and how Cleaning Workers perform their daily work functions, and therefore the cleaning workers are acting in the interest of Montefiore.

26. Montefiore and CSS shared and codetermined the essential terms and conditions of employment of Plaintiffs and the Cleaning Workers.

27. Montefiore possessed and exercised substantial direct and immediate control over the working conditions of Plaintiffs and the Cleaning Workers.

28. For example, Cleaning Workers, including Plaintiffs, were required to attend meetings conducted by Montefiore, were given Montefiore ID badges, and were provided with personal proctective equipment ("PPE") and scrubs by Montefiore.

29. Cleaning Workers were directed by CSS managers who were in close daily contact with Montefiore management.  Montefiore provided mandatory direction and supervision as to where, how, and what tasks would be performed by the cleaning workers each day.

30. Cleaning Workers assigned by CSS to Montefiore worked solely at Montefiore and it's satellite facilties and were not transferred or interchanged to work at any other CSS client.

31. Under the FLSA, multiple "employers" may qualify as a "Joint Employer." The economic reality of Montefiore's relationship with the Cleaning Workers mandates that Montefiore and CSS be treated as a Joint Employer.

32. Operating as a Joint Employer, Defendants engaged in a scheme to deprive the Cleaning Workers of the benefits and wages required by the FLSA and the NYLL and which are provided to other Montefiore workers covered by Montefiore's collective bargaining agreement with 1199 SEIU.

## FACTUAL ALLEGATIONS

33.     As their primary work duties at Montefiore and its satellite facilities, Cleaning Workers, including Plaintiffs, spent more than 25% of their workdays at Montefiore performing physical work duties, including wiping, mopping, sweeping, sanitizing, and disinfecting hallways, patient rooms, bathrooms, kitchens, and any other areas and surfaces exposed to patients and staff.

34.     Cleaning Workers, including Plaintiffs, continued to perform these duties throughout the COVID-19 pandemic.

35.     Cleaning Workers, including Plaintiffs, wore goggles, disposable gowns, gloves, N95 masks, medical scrubs, and other PPE while completing their work duties that were provided by both CSS and Montefiore.

36.     For example, Cruz and other Cleaning Workers received and wore medical scrubs with Montefiore's logo and name written on them, as seen in the image below:



37.     Defendants failed to furnish Cleaning Workers, including Plaintiffs, with a wage notice upon hiring or when their rate of pay changed.

38.     Defendants failed to furnish Cleaning Workers, including Plaintiffs, with accurate wage statements with each payment of their wages throughout their respective employment periods.

39.     Defendants failed to pay Cleaning Workers, including Plaintiffs, their wages on a weekly basis no later than seven calendar days after the end of each workweek.

40.     Defendants failed to pay Cleaning Workers, including Plaintiffs, one hour of pay at the statutory minimum hourly wage rate on each day that they worked a shift in excess of ten hours.

**Danny Ramirez Cruz Guerrero's Hours Worked and Wages Paid**

41.     Throughout his employment with Defendants, Cruz typically worked Monday through Friday, 4:00 p.m. to 12:00 a.m., with an hour-long lunch break, with an identical Saturday shift every other week.  However, in addition to these base hours, Cruz would routinely work additional morning shifts four or five days each week from either 7:00 a.m. or 8:00 a.m. to 4:00 p.m., with an hour-long lunch break. Accordingly, he regularly worked approximately sixty-seven to eighty-two hours per workweek, but on occasion would work even more hours.

42.     From approximately November 2017 through December 2018, Defendants paid Cruz $13.00 per hour worked, including for hours worked over forty per workweek.

43.     From approximately January 2019 through the end of his employment, Defendants paid Cruz $15.00 per hour worked, including for hours worked over forty per workweek.

44.     For example, for work performed between December 16, 2020 and December 31, 2020, Cruz was issued Check No. 7300003873. The pay stub accompanying this check indicates Cruz worked 120 hours across the fifteen days in this pay period and was compensated at $15.00 an hour for each of these hours.

| PERSONAL AND CHECK INFORMATION DANNY CRUZ | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 120.00 | 15.0000 | 1800.00 | 120.00 | 1800.00 |
| | | Total Hours | 120.00 | | | 120.00 | |
| Soc Sec #: xxx-xx-xxxx   Employee ID: 11365 | | Gross Earnings | | | 1800.00 | | 1800.00 |
| | | Total Hrs Worked | 120.00 | | | | |
| Home Department: 1466 Hutch | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Pay Period: 12/16/20 to 12/31/20 | | Social Security | | | 111.60 | | 111.60 |
| Check Date: 01/15/21   Check #: 7300003873 | | Medicare | | | 26.10 | | 26.10 |
| NET PAY ALLOCATIONS | | Fed Income Tax | M 0 | | 138.42 | | 138.42 |
| | | NY Income Tax | M 0 | | 77.87 | | 77.87 |
| DESCRIPTION   THIS PERIOD ($)   YTD ($) | | NY Disability | | | 1.30 | | 1.30 |
| Check Amount   1380.06   1380.06 | | NY Disability PFL | | | 9.20 | | 9.20 |
| NET PAY   1380.06   1380.06 | | NY NYC Inc | S 0 | | 55.45 | | 55.45 |
| | | TOTAL | | | 419.94 | | 419.94 |

45.     Additionally, throughout his employment, Defendants routinely paid Cruz his wages in multiple checks. These checks would either be issued for the same pay period or for overlapping pay periods.

46.     For example, for work performed between August 1, 2022 and August 15, 2022, Cruz was issued two checks, Check No. 6720 and and Check No. 6576. The pay stub accompanying Check No. 6720 indicates Cruz worked 88 hours from August 1, 2022 through August 15, 2022 and was compensated at $15 an hour for each of these hours. The pay stub accompanying Check No. 6576 indicates Cruz worked 64 hours from August 1, 2022 through August 14, 2022 and was compensated at $15.00 an hour for each of these hours with the exception of 8 hours which were compensated at $18.00 an hour. Combined, the checks reflect that Cruz worked at least 152 hours in this period and was paid at $15.00 per hour for all hours with the exception of 8 hours that were were paid at $18.00 an hour.

**PERSONAL AND CHECK INFORMATION**
Danny Cruz

Soc Sec #: xxx-xx-xxxx   **Employee ID:** 11365

Home Department: 1466 Hutch

Pay Period: 08/01/22 to 08/15/22
Check Date: 08/31/22   Check #: 6720

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 1048.65 | 20064.68 |
| NET PAY | 1048.65 | 20064.68 |

**TIME OFF** (Based on Policy Year)

| DESCRIPTION | AMT TAKEN |
|---|---|
| PTO-FT | 40.00 hrs |

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 88.00 | 15.0000 | 1320.00 | 1556.00 | 23924.00 |
| | | Overtime | | | | 16.00 | 360.00 |
| | | Personal Time | | | | 40.00 | 600.00 |
| | | **Total Hours** | 88.00 | | | 1612.00 | |
| | | **Gross Earnings** | | | 1320.00 | | 24884.00 |
| | | **Total Hrs Worked** | 88.00 | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 81.84 | 1542.81 |
| | Medicare | | 19.14 | 360.82 |
| | Fed Income Tax | M 0 | 77.83 | 1304.87 |
| | NY Income Tax | M 0 | 48.96 | 837.13 |
| | NY Disability | | 1.30 | 30.90 |
| | NY PFL | | 6.75 | 127.15 |
| | NY NYC Inc | S 0 | 35.53 | 615.64 |
| | **TOTAL** | | 271.35 | 4819.32 |

**PERSONAL AND CHECK INFORMATION**
Danny Cruz

Soc Sec #: xxx-xx-xxxx   **Employee ID:** 11365

Home Department: 1466 Hutch

Pay Period: 08/01/22 to 08/14/22
Check Date: 08/19/22   Check #: 6576

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 806.74 | 19016.03 |
| NET PAY | 806.74 | 19016.03 |

**TIME OFF** (Based on Policy Year)

| DESCRIPTION | AMT TAKEN |
|---|---|
| PTO-FT | 40.00 hrs |

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 56.00 | 15.0000 | 840.00 | 1468.00 | 22604.00 |
| | | Hourly | 8.00 | 18.0000 | 144.00 | | |
| | | Overtime | | | | 16.00 | 360.00 |
| | | Personal Time | | | | 40.00 | 600.00 |
| | | **Total Hours** | 64.00 | | | 1524.00 | |
| | | **Gross Earnings** | | | 984.00 | | 23564.00 |
| | | **Total Hrs Worked** | 64.00 | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 61.01 | 1460.97 |
| | Medicare | | 14.27 | 341.68 |
| | Fed Income Tax | M 0 | 44.23 | 1227.04 |
| | NY Income Tax | M 0 | 29.30 | 788.17 |
| | NY Disability | | 1.30 | 29.60 |
| | NY PFL | | 5.03 | 120.40 |
| | NY NYC Inc | S 0 | 22.12 | 560.11 |
| | **TOTAL** | | 177.26 | 4547.97 |

47.     As another example, for work performed between July 1, 2022 and July 17, 2022, Cruz was issued two checks, Check No. 6281 and Check No. 6137. The accompanying pay stub for Check No. 6281 indicates that from July 1, 2022 to July 15, 2022, Cruz worked 96 hours and was compensated at $15.00 an hour for each of these hours. However, Cruz also received Check No. 6137 for work performed from July 4, 2022 to July 17, 2022. The pay stub accompanying Check No. 6137 indicates Cruz worked 32 hours during this period and was compensated at $15.00 an hour for these hours. Because Check No. 6281 and Check No. 6137 overlap, Defendants' paystubs do not accurately reflect the total number of hours that Cruz worked in any workweek within these periods. Rather, the checks merely demonstrate that Cruz worked at least 128 hours from July 1, 2022 to July 17, 2022, and that he was paid $15.00 per hour for all of these hours worked, including those over forty in each workweek.

**PERSONAL AND CHECK INFORMATION**
DANNY CRUZ

Soc Sec #: xxx-xx-xxxx   Employee ID: 11365

Home Department: 1466 Hutch

Pay Period: 07/01/22 to 07/15/22
Check Date: 07/29/22   Check #: 6281

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 1134.01 | 17028.38 |
| NET PAY | 1134.01 | 17028.38 |

**TIME OFF** (Based on Policy Year)

| DESCRIPTION | AMT TAKEN |
|---|---|
| PTO-FT | 40.00 hrs |

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 96.00 | 15.0000 | 1440.00 | 1308.00 | 20180.00 |
| | | Overtime | | | | 16.00 | 360.00 |
| | | Personal Time | | | | 40.00 | 600.00 |
| | | **Total Hours** | 96.00 | | | 1364.00 | |
| | | **Gross Earnings** | | | 1440.00 | | 21140.00 |
| | | **Total Hrs Worked** | 96.00 | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 89.28 | 1310.68 |
| | Medicare | | 20.88 | 306.53 |
| | Fed Income Tax | M 0 | 90.68 | 1116.98 |
| | NY Income Tax | M 0 | 55.98 | 716.93 |
| | NY PFL | | 7.36 | 108.01 |
| | NY Disability | | 1.30 | 25.80 |
| | NY NYC Inc | S 0 | 40.51 | 526.69 |
| | **TOTAL** | | 305.99 | 4111.62 |

**PERSONAL AND CHECK INFORMATION**
DANNY CRUZ

Soc Sec #: xxx-xx-xxxx   Employee ID: 11365

Home Department: 1466 Hutch

Pay Period: 07/04/22 to 07/17/22
Check Date: 07/22/22   Check #: 6137

**NET PAY ALLOCATIONS**

| DESCRIPTION | THIS PERIOD ($) | YTD ($) |
|---|---|---|
| Check Amount | 428.01 | 15894.37 |
| NET PAY | 428.01 | 15894.37 |

**TIME OFF** (Based on Policy Year)

| DESCRIPTION | AMT TAKEN |
|---|---|
| PTO-FT | 40.00 hrs |

| EARNINGS | BASIS OF PAY | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 32.00 | 15.0000 | 480.00 | 1212.00 | 18740.00 |
| | | Overtime | | | | 16.00 | 360.00 |
| | | Personal Time | | | | 40.00 | 600.00 |
| | | **Total Hours** | 32.00 | | | 1268.00 | |
| | | **Gross Earnings** | | | 480.00 | | 19700.00 |
| | | **Total Hrs Worked** | 32.00 | | | | |

| WITHHOLDINGS | DESCRIPTION | FILING STATUS | THIS PERIOD ($) | YTD ($) |
|---|---|---|---|---|
| | Social Security | | 29.76 | 1221.40 |
| | Medicare | | 6.96 | 285.65 |
| | Fed Income Tax | M 0 | | 1026.30 |
| | NY Income Tax | M 0 | 5.95 | 660.95 |
| | NY Disability | | 1.30 | 24.50 |
| | NY PFL | | 2.45 | 100.65 |
| | NY NYC Inc | S 0 | 5.57 | 486.18 |
| | **TOTAL** | | 51.99 | 3805.63 |

48.     Beyond the practices noted above, Defendants would also pay Cruz in multiple checks under different names.  For portions of his employment with Defendants, Cruz's manager, Orancy, informed Cruz that if he wanted to continue working his extra hours, he would have to be paid in checks under his name and the name "Ricardo Soto." Cruz had never met anyone that went by this name who worked for CSS and was told that these checks were meant to compensate him for hours worked along with the checks issued under his name.

49.     For example, for work performed between September 16, 2021 and September 30, 2021, Cruz received two checks, Check No. 7300008027 issued to his name and Check No. 7300008046 issued to Ricardo Soto.  The accompanying pay stub for Check No. 7300008027  issued under his name indicates he worked 88 hours in this period and was paid $15.00 an hour for all of these hours.   At the same time, the pay stub accompanying Check No. 7300008046 issued to Ricardo Soto but given to Cruz reflects

that he worked 80 hours in this period and was paid at a $15.00 an hour for all of these

hours.  Combined, the checks reflect that Cruz worked at least 168 hours in this period

and was paid at $15.00 per hour for all hours.

| PERSONAL AND CHECK INFORMATION DANNY CRUZ | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 88.00 | 15.0000 | 1320.00 | 1936.00 | 29104.00 |
| | | Total Hours | 88.00 | | | 1936.00 | |
| Soc Sec #: xxx-xx-xxxx    Employee ID: 11365 | | Gross Earnings | | | 1320.00 | | 29104.00 |
| | | Total Hrs Worked | 88.00 | | | | |
| Home Department: 1466 Hutch | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Pay Period: 09/16/21 to 09/30/21 | | Social Security | | | 81.84 | | 1804.45 |
| Check Date: 10/15/21    Check #: 7300008027 | | Medicare | | | 19.14 | | 422.01 |
| NET PAY ALLOCATIONS | | Fed Income Tax | M 0 | | 81.17 | | 1931.98 |
| | | NY Income Tax | M 0 | | 49.21 | | 1128.55 |
| DESCRIPTION      THIS PERIOD ($)    YTD ($) | | NY Disability | | | 1.30 | | 28.50 |
| Check Amount      1045.06      22827.42 | | NY PFL | | | 6.75 | | 148.75 |
| NET PAY         1045.06      22827.42 | | NY NYC Inc | S 0 | | 35.53 | | 812.34 |
| TIME OFF (Based on Policy Year) | | TOTAL | | | 274.94 | | 6276.58 |
| DESCRIPTION   AMT TAKEN | | | | | | | |
| PTO-FT        0.00 hrs | | | | | | | |

| PERSONAL AND CHECK INFORMATION Ricardo Soto | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|
| | | Hourly | 80.00 | 15.0000 | 1200.00 | 464.00 | 6960.00 |
| | | Total Hours | 80.00 | | | 464.00 | |
| Soc Sec #: xxx-xx-xxxx    Employee ID: 114357 | | Gross Earnings | | | 1200.00 | | 6960.00 |
| | | Total Hrs Worked | 80.00 | | | | |
| Home Department: 1466 Hutch | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| Pay Period: 09/16/21 to 09/30/21 | | Social Security | | | 74.40 | | 431.52 |
| Check Date: 10/15/21    Check #: 7300008046 | | Medicare | | | 17.40 | | 100.92 |
| NET PAY ALLOCATIONS | | Fed Income Tax | SMS | | 72.96 | | 355.26 |
| | | NY Income Tax | S 0 | | 43.42 | | 225.63 |
| DESCRIPTION      THIS PERIOD ($)    YTD ($) | | NY PFL | | | 6.13 | | 35.56 |
| Check Amount      984.39      5802.01 | | NY Disability | | | 1.30 | | 9.10 |
| NET PAY         984.39      5802.01 | | TOTAL | | | 215.61 | | 1157.99 |
| TIME OFF (Based on Policy Year) | | | | | | | |
| DESCRIPTION   AMT TAKEN | | | | | | | |
| PTO-FT        0.00 hrs | | | | | | | |

50.    Defendants would on occasion pay Cruz a portion of his wages in cash.

Specifically, Defendants would compensate Cruz for his "regular hours" (*i.e.*, hours up

to 40 in a workweek) in checks with accompanying pay stubs, with any remaining hours

being compensated in cash at his regular at his regular hourly rate with no accompanying

wage statement or pay stub.

51.    Defendants' pay practices, which included issuing multiple checks for the

same pay period, paying a portion of his wages in cash, issuing checks with overlapping

pay periods, and issuing checks under different names, were an attempt to misrepresent

and disguise the total hours worked in a week by Cruz and other Cleaning Workers so as to deprive them of the overtime pay they were entitled to under the FLSA and NYLL.

52.     The checks referenced above demonstate that Cruz received his wages on a bi-monthly basis, more than seven days after the end of the pay period.  For example, Check No. 6720 for the pay period beginning on August 1, 2022 and running through August 15, 2022 was not issued until August 31, 2022, sixteen days after the end of the pay period.

**Cristopher Ismael Ramirez Morel's Hours Worked and Wages Paid**

53.     From approximately July 15, 2018, to August 2018, Ramirez's regular schedule was Sunday to Friday, from 7:00 a.m. to 4:00 p.m., with an hour-long lunch break, for approximately forty-eight hours per workweek.

54.     From approximately August 2018 through February 2019, Ramirez's base schedule was Monday to Friday, 7:00 a.m. to 4:00 p.m., with an hour-long lunch break. However, he would routinely work a double shift from 4:00 p.m. to 12:00 p.m., with an hour-long break, once a week for approximately forty-seven hours a week during this period.

55.     From approximately March 2019 through the end of his employment, Ramirez's base schedule was Monday to Wednesday, 7:00 a.m. to 4:00 p.m., with an hour-long lunch break, and Friday, 7:00 a.m. to 12:00 a.m., with two hour-long lunch breaks, for approximately 39 hours per workweek.  Ramirez would routinely be asked to work an additional shift on one of his days off once very two weeks from 4:00 p.m. to 12:00 p.m., with an hour-long break, for approximately 46 hours a week during this period.

56.     From approximately July 15, 2018, through December 2018, Defendants paid Ramirez $13.00 per hour worked, including for hours worked over forty per workweek.

57.     From approximately January 2019 to the end of his employment, Defendants paid Ramirez $15.00 per hour worked, including for hours worked over forty per workweek.

58.     Throughout his employment, Ramirez's wages were paid in both checks and in cash. Specifically, Ramirez would be compensated for his "regular hours" (*i.e.*, hours up to 40 in a workweek) in checks with accompanying pay stubs, with any remaining hours being compensated in cash at his regular hourly rate with no accompanying wage statement or pay stub.

59.     Defendants also paid Ramirez his wages on a bi-monthly basis, more than seven days after the end of the pay period. For example, Check No. 7294011263 for the pay period beginning on March 16, 2020 and running through March 31, 2020 was not issued until April 15, 2020, fifteen days after then end of the pay period.

| PERSONAL AND CHECK INFORMATION | | | EARNINGS | DESCRIPTION | HRS/UNITS | RATE | THIS PERIOD ($) | YTD HOURS | YTD ($) |
|---|---|---|---|---|---|---|---|---|---|
| CHRISTOPHER RAMIREZ | | | | | | | | | |
| | | | | Hourly | 96.00 | 15.0000 | 1440.00 | 616.00 | 9240.00 |
| | | | | Total Hours | 96.00 | | | 616.00 | |
| Soc Sec #: XXX-XX-XXXX   Employee ID: 11398 | | | | Gross Earnings | | | 1440.00 | | 9240.00 |
| | | | | Total Hrs Worked | 96.00 | | | | |
| Home Department: 1466 Hutch | | | WITHHOLDINGS | DESCRIPTION | FILING STATUS | | THIS PERIOD ($) | | YTD ($) |
| | | | | Social Security | | | 89.28 | | 572.88 |
| Pay Period: 03/16/20 to 03/31/20 | | | | Medicare | | | 20.88 | | 133.98 |
| Check Date: 04/15/20   Check #: 7294011263 | | | | Fed Income Tax | S 1 | | 124.07 | | 767.69 |
| NET PAY ALLOCATIONS | | | | NY Income Tax | S 1 | | 55.50 | | 337.63 |
| | | | | NY Disability | | | 1.30 | | 9.10 |
| DESCRIPTION | THIS PERIOD ($) | YTD ($) | | NY Dsability PFL | | | 3.89 | | 24.95 |
| Check Amount | 1104.57 | 7144.76 | | NY NYC Inc | S 0 | | 40.51 | | 249.01 |
| NET PAY | 1104.57 | 7144.76 | | | | | | | |
| | | | | TOTAL | | | 335.43 | | 2095.24 |

60.     Ramirez was primarily stationed in the ambulatory wing of Montefiore's Hutchinson Campus, an area normally reserved for low-risk patients and those recovering from outpatient procedures. Ramirez is an immuno-compromised individual who requested to work in this area because it was rarely exposed to contagious diseases. When the COVID-19 pandemic began to ravage the New York City metropolitan area in early April 2020, Ramirez was informed that patients from nearby hospitals would be moved into the ambulatory wing he was assigned to since other facilities were becoming

more overwhelmed.  At no point was Ramirez told the patients being moved into the area of the hospital he was assigned would be COVID-19 patients.  Despite previously expressing concerns about his health and the fact that he had two young children at home to CSS manager Jose, CSS never informed him that he would be exposed to COVID-19 patients.  He only became aware that the patients being moved into the ambulatory wing were infected with COVID-19 when Montefiore held a meeting for all staff at the facility, including the Cleaning Workers, to discuss the arrival of COVID-19 patients.  Fearing for his safety, Ramirez immediately resigned from his employment with the Defendants.

## COLLECTIVE ACTION ALLEGATIONS

61.     Plaintiffs bring this action on behalf of themselves and all similarly situated persons who have worked as Cleaning Workers for CSS and Montefiore within the three years prior to the filing of this Complaint and who elect to opt-in to this action (the "FLSA Collective").

62.     The FLSA Collective consists of over two hundred Cleaning Workers who have been victims of Defendants' common policy and practices that have violated their rights under the FLSA by, inter alia, willfully denying them overtime wages.

63.     Throughout Plaintiffs' employment, Plaintiffs and the FLSA Collective have had work schedules consisting of over forty hours per workweek, have performed similar cleaning duties, and have been subjected to Defendants' common pay policies depriving them of overtime wages at the rate of one and one-half times their regular hourly wage rates for all hours worked in excess of forty per workweek.

64.     Defendants are aware or should have been aware that the FLSA required them to pay Cleaning Workers an overtime premium for hours worked in excess of forty per workweek.

65.     Defendants' unlawful conduct has been intentional, willful, and in bad faith and has caused significant monetary damage to Plaintiffs and the FLSA Collective.

66.     The FLSA Collective would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join the present lawsuit.  All similarly situated Cleaning Workers can be readily identified and located through Defendants' records.  The similarly situated Cleaning Workers should be notified of and allowed to opt-in to this action pursuant to 29 U.S.C. § 216(b).

## CLASS ACTION ALLEGATIONS

67.     Plaintiffs bring the claims in this Complaint arising out of the NYLL under Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and a class consisting of all similarly situated non-exempt Cleaning Workers who work or have worked for CSS and Montefiore since October 27, 2016 (the "Rule 23 Class").

68.     The employees in the Rule 23 Class are so numerous that joinder of all members is impracticable.

69.     The size of the Rule 23 Class is at least two hundred individuals, although the precise number of such employees is unknown.  Facts supporting the calculation of that number are presently within the sole control of Defendants.

70.     Defendants have acted or have refused to act on grounds generally applicable to the Rule 23 Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Rule 23 Class as a whole.

71.     Common questions of law and fact exist as to the Rule 23 Class that predominate over questions affecting them individually including, inter alia, the following:

a.   whether Defendants violated NYLL Article 6, § 190, *et seq.*, and Article 19, § 650, *et seq.*, and the supporting New York State Department of Labor regulations, 12 N.Y.C.R.R. Part 142, as alleged herein;

b.   whether Defendants failed to pay the Rule 23 Class at the correct overtime rate for all time worked in excess of forty hours per week;

c.   whether Defendants failed to provide the Rule 23 Class with accurate wage statements as required by the NYLL and WTPA;

d.   whether Defendants failed to furnish the Rule 23 Class with wage notices as required by the WTPA;

e.   whether Defendants failed to pay the Rule 23 Class, who were manual laborers, on a weekly basis, in violation of NYLL § 191(1)(a); and

f.   the nature and the extent of the class-wide injury and the measure of damages for those injuries.

72.   Plaintiffs' claims are typical of the claims of the Rule 23 Class they seek to represent.  Plaintiffs and the members of the Rule 23 Class work or have worked for Defendants at various times within the applicable six-year statutory period.  They enjoy the same statutory rights under the NYLL to be paid at the overtime rate for all hours worked over forty in a workweek.  Plaintiffs and the members of the Rule 23 Class have sustained similar types of damages as a result of Defendants' failure to comply with the NYLL.

73.   Plaintiffs and the Rule 23 Class have all been injured in that they have been under-compensated due to Defendants' common policies, practices, and patterns of conduct.

74.   Plaintiffs will fairly and adequately represent and protect the interests of the members of the Rule 23 Class.

75.   Plaintiffs have retained legal counsel competent and experienced in wage and hour litigation and class action litigation.

76.   There is no conflict between Plaintiffs and the Rule 23 Class members.

77.     A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The members of the Rule 23 Class have been damaged and are entitled to recovery as a result of Defendants' common policies, practices, and procedures.  Although the relative damages suffered by the individual class members are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.  Individual plaintiffs lack the financial resources necessary to conduct a thorough examination of Defendants' compensation practices and to prosecute vigorously a lawsuit against Defendants to recover such damages.   In addition, class action litigation is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' practices.

78.     This action is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

**FIRST CLAIM**
**(FLSA – Unpaid Overtime)**

79.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

80.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs and the FLSA Collective overtime wages at the rate of one and one-half their regular hourly wage rates, which cannot be less than the applicable minimum wage rate, per hour worked in excess of forty per workweek.

81.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(d) and 207(a) and employed Plaintiffs and the FLSA Collective.

82.     Defendants have not made a good faith effort to comply with the FLSA with respect to Plaintiffs' and the FLSA Collective's compensation.

83.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs and the FLSA Collective.

84.     Due to Defendants' violations of the FLSA, Plaintiffs and the FLSA Collective are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

**SECOND CLAIM**
**(NYLL – Unpaid Overtime)**

85.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

86.     Pursuant to the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs and the Rule 23 Class one and one-half (1½) times their regular hourly rates of pay for all hours worked in excess of forty per workweek.

87.     Defendants are employers within the meaning of the NYLL §§ 190, 651(6), and supporting NYDOL Regulations, and employed Plaintiffs and the Rule 23 Class.

88.     Defendants failed to pay Plaintiffs and the Rule 23 Class overtime wages equal to one and one-half (1½) times their regular hourly rates of pay, which could not be less than the minimum wage rate, per hour worked in excess of forty per workweek.

89.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs and the Rule 23 Class overtime wages.

90.     Due to Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover their unpaid overtime wages, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## THIRD CLAIM
### (NYLL – Unpaid Spread-of-Hours Pay)

91.     Plaintiffs repeats and realleges all foregoing paragraphs as if fully set forth herein.

92.     Defendants willfully failed to pay Plaintiffs and the Rule 23 Class additional compensation of one hour of pay at the statutory minimum wage rate for each day during which Plaintiffs' shifts spread over more than ten hours.

93.     By Defendants' failure to pay Plaintiffs and the Rule 23 Class spread-of-hours pay, Defendants willfully violated Section 650 *et seq.*, of the NYLL and the supporting NYDOL regulations, including, but not limited to, 12 N.Y.C.R.R § 142-2.4.

94.     As a result of Defendants' willful violations of the NYLL, Plaintiffs and the Rule 23 Class are entitled to recover unpaid spread-of-hours pay, liquidated damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs of the action.

## FOURTH CLAIM
### (NYLL § 191 – Frequency of Payments)

95.     Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

96.     In 1967, the New York State legislature amended NYLL § 198 to impose "stronger sanctions" in the form of liquidated damages to compel employers to comply with the requirements of Article 6 of the NYLL, including the frequency of payment requirements set forth in Section 191 of the NYLL.  These "stronger sanctions" serve to "compensate the employee for the loss of the use of money to which he [or she] was entitled," as is the case with late wage payments, because an employee loses "the use of money [when] he or she is never paid, partially paid, or paid late." *Vega v. CM & Assocs. Constr. Mgt., LLC*, 175 A.D.3d 1144, 1146 n. 2 (1st Dep't 2019) (citation omitted).  This

concept is not new.   For decades, the United States Supreme Court has likewise interpreted the FLSA, 29 U.S.C. § 201 *et seq.*, on which the NYLL is based, as entitling employees to recover liquidated damages "regardless of whether an employee has been paid wages owed before the commencement of the action."   *Id.* (quoting *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

97.    Defendants violated Section 191 of the NYLL by paying Plaintiffs and the Rule 23 Class wages on a bi-monthly basis.  As "manual workers" within the meaning of the NYLL, they should have been paid "weekly and not later than seven calendar days after the end of the week the[ir] wages are earned."  N.Y. Lab. L. § 191(1)(a)(i).

98.    Throughout their employment, Plaintiffs and the Rule 23 Class spent more than 25% of their working time performing physical tasks.

99.    Plaintiffs and the Rule 23 Class were "manual workers" within the meaning of NYLL § 191(1)(a).

100.    Defendants should have paid Plaintiffs and the Rule 23 Class on a weekly basis, "and not later than seven calendar days after the end of the week in which the wages were earned."  N.Y. Lab. L. § 191(1)(a).

101.    Because Defendants failed to pay Plaintiffs and the Rule 23 Class on a weekly basis, in addition to other recovery available to them as set forth in this Complaint, Cleaning Workers are entitled to recover liquidated damages equal to their wages paid a week late in every bi-weekly pay period.

**FIFTH CLAIM**
**(NYLL – Failure to Provide Wage Notices)**

102.    Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

103.   The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

104.   Defendants failed to furnish to Plaintiffs and the Rule 23 Class at the time of hiring, and whenever there was a change to Plaintiffs' and the Rule 23 Class's rates of pay, with wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law; in violation of the NYLL § 195(1).

105.   Due to Defendants' violation of NYLL § 195(1), Plaintiffs and the Rule 23 Class are entitled to recover from Defendants liquidated damages of $50.00 per day that the violation occurred, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**SIXTH CLAIM**
**(NYLL – Failure to Provide Accurate Wage Statements)**

106.   Plaintiffs repeat and incorporate all foregoing paragraphs as if fully set forth herein.

107.   Defendants failed to furnish Plaintiffs and the Rule 23 Class, with each wage payment, with a statement accurately listing: rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular

hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of NYLL § 195(3).

108.    Due to Defendants' violation of the NYLL, § 195(3), Plaintiffs and the Rule 23 Class are entitled to recover from the Defendants liquidated damages of $250.00 per workday, up to a maximum of $5,000.00, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves, the FLSA Collective, and the Rule 23 Class, respectfully request that this Court:

a.    certify this case as a class action pursuant to Rule 23 for the class of employees described herein, certification of Plaintiffs as the class representatives, and designation of Plaintiffs' counsel as Class Counsel;

b.    designate this action as a collective action on behalf of the FLSA Collective and authorize the prompt issuance a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

c.    declare that Defendants have violated the overtime wage provisions of the FLSA and the NYLL;

d.    declaring that Defendants violated the spread-of-hours pay provisions of the NYLL and NYDOL regulations;

e.    declare that Defendants violated the frequency of payments provision of the NYLL;

f.      declare that Defendants violated the notice and record keeping provisions of the NYLL and WTPA;

g.      declare that Defendants' violations of the FLSA and NYLL were willful;

h.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class unpaid overtime wages;

i.      award Plaintiffs and the Rule 23 Class unpaid spread-of-hours pay;

j.      award Plaintiffs and the Rule 23 Class liquidated damages as a result of Defendants' failure to pay wages on a weekly basis in violation of the NYLL;

k.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish them with a notice at the time of hiring or whenever there was a change in their rates of pay, in violation of the NYLL and WTPA;

l.      award Plaintiffs and the Rule 23 Class statutory damages as a result of Defendants' failure to furnish to furnish them with accurate wage statements at the end of each pay period, in violation of the NYLL and WTPA;

m.      award Plaintiffs, the FLSA Collective, and the Rule 23 Class liquidated damages pursuant to the FLSA and the NYLL;

n.      award Plaintiffs and the Rule 23 Class pre- and post-judgment interest under the NYLL;

o.      awarding Plaintiffs, the FLSA Collective, and the Rule 23 Class reasonable attorneys' fees and costs of the action pursuant to the FLSA and the NYLL; and

p.      award such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury in this action.

Dated:  New York, New York
          October 27, 2020

PECHMAN LAW GROUP PLLC

By:

Louis Pechman
Vivianna Morales
Christian Mercado
Pechman Law Group PLLC
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel.: (212) 583-9500
pechman@pechmanlaw.com
morales@pechmanlaw.com
mercado@pechmanlaw.com

*Attorneys for Plaintiffs, the
Putative FLSA Collective, and putative
Rule 23 Class*

24