**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

DANNY RAMIREZ CRUZ GUERRERO
and CRISTOPHER ISMAEL RAMIREZ
MOREL, on behalf of themselves and
all others similarly situated,

                                    Plaintiffs,

                    -against-

MONTEFIORE HEALTH SYSTEM INC. and CSS
BUILDING SOLUTIONS INC.,

                                    Defendants.
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _1/15/2025___

**22-CV-9194 (KHP)**

**OPINION APPROVING COLLECTIVE
SETTLEMENT AND ATTORNEYS'
FEES AND COSTS**

**KATHARINE H. PARKER, United States Magistrate Judge:**

This is a pending class action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §

201 *et seq.*, New York Labor Law ("NYLL"), § 190 *et seq.*, and New York's Wage Theft Prevention

Act ("WTPA"), NYLL § 195(1) and (3), seeking recovery of unpaid overtime pay, spread-of-hours

pay, and penalties for frequency of payment violations and wage statement/notice violations

under NYLL.  (Third Amended Complaint ("TAC"), ECF No. 40 at ¶¶1-2.)  On September 9, 2024,

the undersigned granted Plaintiffs' motion for preliminary approval of the proposed settlement.

(ECF No. 96.)  On December 18, 2024, Plaintiffs filed the instant motion for final approval of the

proposed class action settlement.  (*See* Motion for Final Settlement Approval ("Final Approval"),

ECF No. 99.)  For the reasons stated below, the Motions for Final Approval is GRANTED.

## BACKGROUND AND PROCEDURAL HISTORY

On October 27, 2022, named Plaintiffs Danny Ramirez Cruz Guerrero and Cristopher

Ismael Ramirez Morel commenced this class action on behalf of themselves and all similarly

situated cleaning workers employed by CSS Building Solutions Inc. ("CSS") who performed cleaning duties at Montefiore Health System, Inc. facilities (collectively, the "Class"), against Defendants CSS and Montefiore Health System, Inc. ("Montefiore") for alleged violations of the FLSA and NYLL.  (Complaint at ¶¶ 1-2.)  Specifically, Plaintiffs alleged that CSS and Montefiore, as joint employers, failed to pay overtime wages under the NYLL and the FLSA, failed to pay spread-of-hours pay under the NYLL, violated the frequency of pay provisions of NYLL § 191, and failed to provide accurate wage statements under NYLL § 195(3) and wage notices under NYLL §195(1) of WTPA.  (*Id.* at ¶¶ 32, 80, 88, 92, 97, 104, 107.)  On January 6, 2023, Montefiore filed a letter seeking leave to file a motion to dismiss Plaintiffs' NYLL §191(1)(a) frequency of pay claims against Montefiore for failure to state a claim and Plaintiffs' WTPA claims for lack of standing. (ECF No. 19.)  Plaintiffs subsequently filed an Amended Complaint and a Second Amended Complaint on January 25, 2023, and February 28, 2023, respectively.  (ECF No. 26, 32.)  On March 21, 2023, Montefiore filed a motion to dismiss the frequency of pay and WTPA claims against it as alleged in the Second Amended Complaint. (ECF No. 35.) Thereafter, the Parties conferred and agreed that Plaintiffs would dismiss their frequency of pay and WTPA claims against Montefiore only.  Accordingly, on April 14, 2023, Plaintiffs filed a Third Amended Complaint, the operative complaint, which removed the frequency of pay and failure to provide wage notices claims against Montefiore.  (ECF No. 40.)  Defendants filed Answers in May 2023, in which they generally denied the material allegations in the Third Amended Complaint, including that CSS and Montefiore were joint employers.  (ECF Nos. 46, 49.)

On August 23, 2023, the parties stipulated to the conditional certification of an FLSA collective action consisting of all individuals employed by CSS who performed cleaning duties at

Montefiore facilities at any time since March 23, 2020.  (ECF No. 60.)  Thereafter, the parties

engaged in discovery, including serving and responding to interrogatories and document

requests, as well as taking depositions. (Motion for Final Approval at 2-3.)  On November 3,

2023, 115 Collective Action Notices were mailed to the individuals identified by CSS as putative

collective action members, which yielded twelve opt-in plaintiffs. (*Id.* at 3.)  The parties

appeared for a settlement conference before the undersigned on May 13, 2024, and reached a

settlement in principle.  (*Id.* at 4.)  On May 14, 2024, the parties consented to conduct all

proceedings and entry of a final judgment to the undersigned in accordance with 28 U.S.C. §

636(c).  (ECF No. 91.)  The parties signed a stipulation in August 2024.  (*Id.*)

On August 30, 2024, the parties moved for preliminary approval of the settlement

("Preliminary Approval Motion"). (ECF No. 93.)  On September 9, 2024, the Court preliminarily

approved the settlement and set a final approval hearing for January 7, 2025, which was later

rescheduled to January 15, 2025 at 2:00 P.M. (ECF Nos. 96, 98.)

The Claim Administrator, Rust Consulting, then sent class notices in Spanish and English

to approximately 172 class members.  (Affirmation of Louis Pechman in Support of Motion for

Final Class and Collective Action Settlement Approval ("Pechman Affirmation"), ECF No. 100, at

¶¶ 40-41.)  Among other things, the notices apprised class members of the class action claims,

Class Members' right to object to the Settlement or exclude themselves from the Settlement,

and also explained the plan of allocation.  (*Id.* at ¶ 43.)  The deadline to submit an exclusion or

objection to the settlement was December 14, 2024.  (*Id.* at ¶ 41.)  No Class Member objected

to or opted-out of the Settlement.  (*Id.* at ¶ 53.)  At the Fairness Hearing, Plaintiff's counsel

confirmed that Rust was unable to deliver the Notice Materials to 38 Class Members.  (*Id.* at ¶

52.)

Plaintiffs now seek final approval of the proposed class action settlement and an award of attorneys' fees and costs and service awards for the named Plaintiffs.  (ECF No. 101.)

## THE SETTLEMENT AGREEMENT

The proposed Settlement Agreement defines "Class Members" as

Plaintiffs Danny Ramirez Cruz Guerrero and Cristopher Ismael Ramirez Morel, Opt-In Plaintiffs, and other individuals employed by CSS who performed cleaning duties at Montefiore facilities at any time from March 13, 2016, to October 27, 2022.

(Proposed Settlement Agreement, ECF No. 94-1 at ¶ 1.6.)  Class Members will be entitled to a share of the Net Settlement Fund, which is the Settlement Amount, that is $1,800,000.00, minus the Claim Administrator's fees and costs, Court-approved attorneys' fees and costs for class counsel, and service awards to named Plaintiffs.  (*Id.* at ¶¶ 1.17, 1.28, 3.4.)  The plan of allocation allocates the Net Settlement Fund based on each Class Member's total damages (consisting of unpaid overtime, spread of hours pay, frequency of pay penalties, liquidated damages and interest), as against the total calculated damages of all Class Members, yielding a percentage that is then multiplied by the Net Settlement Fund.  (*Id.* at ¶ 3.4(B).)  This is not a claims-made settlement, meaning that class members are not required to submit a claim form to receive a payment.  Class Members who do not timely return an opt-out statement will automatically be issued a settlement check by the Claims Administrator. (*Id.* at ¶ 2.9.)

In exchange for the receipt of a Settlement check, Class Members release:[1]

Defendants from all wage and hour claims under the Fair Labor Standards Act and the New York Labor Law brought or which could have been brought in the Action, including but not limited to minimum wage, overtime pay, spread-of-hours pay, liquidated

---

[1] Only Class Members who deposit their Settlement Checks release their wage and hour claims against Defendants under the FLSA. (Proposed Settlement Agreement at ¶ 2.9.)

damages under NYLL § 198, and claims for penalties under NYLL § 195.

(*Id.* at ¶ 2.9.)

Class Counsel requests that the Court approve the proposed award of attorneys' fees in the amount of 1/3 of the Settlement Amount (i.e. $600,000), plus costs and expenses; administration fees of $17,802 to be paid out of the Settlement Amount to Rust Consulting, Inc.; and service awards of $15,000 for Cruz Guerrero and $10,000 for Ramirez Morel.  (*Id.* at ¶¶ 3.2-3.4; Motion for Final Approval at 21.)

## **LEGAL STANDARD**

In the Second Circuit, "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 330 (E.D.N.Y. 2010) (quoting *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (internal quotation marks omitted)).  "[C]lass action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation."  *Id.*  Rule 23(e) provides that "claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e).  Court approval of a class action settlement must be premised on a hearing and subsequent finding that the settlement is "fair, reasonable, and adequate" and not the product of collusion or some other malfeasance.  *See* F.R.C.P. 23(e)(3); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (citing *Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).

Before approving a class action settlement, the district court must conclude that the proposed class meets the requirements for class certification set forth in Rule 23(a) and the

relevant subsection of Rule 23(b). *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 239 (2d Cir. 2012). When considering a request for certification of a settlement class, the Court does not need to inquire whether the case, if tried, would ". . . present intractable management problems, for the proposal is that there be no trial." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). "At the same time, however . . . other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention." *Id.* (quoting *Amchem*, 521 U.S. at 620) (internal quotation marks omitted). "Thus, in the context of settlement, Rules 23(a) and (b) continue to serve the purpose of 'focus[ing] court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives." *Id.*

The determination of whether the class should be certified and the terms of the proposed settlement are "fair, reasonable, and adequate" rests in the discretion of the district court. *Denney v. Deutsche Bank AG,* 443 F.3d 253, 273 (2d Cir. 2006); *see* Fed. R. Civ. P. 23(e)(2). In exercising its discretion, the district court must engage in careful balancing but "must stop short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 462 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). As such, "[i]t cannot be overemphasized that neither the trial court in approving the settlement nor [the Circuit Court] in reviewing that approval have the right or the duty to reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute." *Grinnell*, 495 F.2d at 456. "Defendants in class action suits are entitled to settle claims pending against them on a class-wide basis even if a court believes that those claims may be meritless, provided that the class is

properly certified under Rules 23(a) and (b) and the settlement is fair under Rule 23(e)."  *In re Am. Int'l Grp., Inc. Sec. Litig.,* 689 F.3d 243-44 (2d Cir. 2012).

Courts tasked with approving a settlement then consider its procedural and substantive fairness, determining whether the terms of the settlement and the negotiation process leading up to it are fair.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408 (S.D.N.Y. 2018), *aff'd sub nom*. *In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (citing *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 575 (S.D.N.Y. 2008) (internal quotation marks omitted)).  When a settlement is the product of "arms-length negotiations between experienced, capable counsel after meaningful discovery," it is afforded a "presumption of fairness, adequacy, and reasonableness."  *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004).  Additionally, when considering the benefits achieved by a settlement, courts must keep in mind that "there is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972).

## DISCUSSION

I.   Class Certification

After a careful review of the briefing and settlement, the Court finds that the prerequisites for certification of the proposed settlement class are satisfied.

a.   Rule 23(a)

Rule 23(a) imposes four threshold requirements for certification of a class action: (1) numerosity ("the class is so numerous that joinder of all members is impracticable"); (2)

commonality ("there are questions of law or fact common to the class"); (3) typicality ("the claims or defenses of the representative parties are typical of the claims or defenses of the class"); and (4) adequacy of representation ("the representative parties will fairly and adequately protect the interests of the class").  Fed. R. Civ. P. 23(a).

With regard to the first requirement, "numerosity is presumed at a level of 40 members[.]"  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995).  "The movant need not provide a precise quantification of their class, since a court may make common sense assumptions to support a finding of numerosity . . . [n]evertheless, the movant must show some evidence of or reasonably estimate the number of class members."  *Kalkstein v. Collecto, Inc.*, 304 F.R.D. 114, 119 (E.D.N.Y. 2015) (internal quotation marks and citation omitted).  Here, the Class consists of approximately 172 individuals.  Therefore, numerosity is satisfied.

Additionally, the commonality and typicality requirements are met here.  The commonality and typicality requirements of Rule 23(a) tend to merge such that similar considerations inform the analysis for both prerequisites.  *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 349 n.5 (2011); *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997).  A class may only be certified if "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  Commonality demands that the class's claims "depend upon a common contention . . . capable of classwide resolution" such that "its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes,* 564 U.S. at 350.  "'[F]actual differences in the claims of the class do not preclude a finding of commonality.'"  *Newman v. RCN Telecom Servs., Inc.,* 238 F.R.D. 57, 73 (S.D.N.Y. 2006) (quoting 5 *Moore's*

*Federal Practice* § 23.23).  Commonality may be found where the plaintiffs' alleged injuries "derive from a unitary course of conduct by a single system." *Giuliani*, 126 F.3d at 377. Similarly, with the typicality requirement, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of [those] of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality requirement "is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *Giuliani,* 126 F.3d at 376.  "[M]inor variations in the fact patterns underlying [the] individual claims" do not preclude a finding of typicality. *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

Here, the common questions of law and fact in this case all relate to whether Defendants failed to pay Class Members overtime wages and spread-of-hours pay, failed to timely pay wages, and failed to furnish Class Members with wage statements and notices. Thus, all of the members of the proposed class are alleged to have suffered the same harm based on the same acts of Defendants, and the named Plaintiffs are relying on the same conduct and suffered the same harm as the other settlement class members.  Accordingly, the commonality and typicality requirements of Rule 23(a) are met. *See Mangahas v. Eight Oranges Inc.*, No. 22-CV-4150 (LJL), 2024 WL 2801922, at *6 (S.D.N.Y. May 31, 2024) ("[C]laims by workers that their employers have unlawfully denied them wages to which they were legally entitled have repeatedly been held to meet the commonality prerequisite for class certification."); *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (GWG), 2015 WL 539506, at *3 (S.D.N.Y. Feb. 10, 2015) (commonality and typicality satisfied where "all class members claim that Defendants failed to pay them the wages they were entitled to and did not provide them

with certain notices as required by New York law" and named plaintiff's claims were typical of class claims).

In order to meet the final requirement, adequate representation of the class's interests, Plaintiffs must demonstrate that: (1) the class representatives do not have conflicting interests with other class members; and (2) class counsel is qualified, experienced and generally able to conduct the litigation. *Giuliani*, 126 F.3d at 378. To satisfy the first prong, courts in this Circuit have required plaintiffs to show that "no fundamental conflicts exist" between the class representatives and its members. *See Charron v. Wiener*, 731 F.3d 241, 249 (2d Cir. 2013) (citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011)). Here, named Plaintiffs and the other Class Members do not have conflicting interests as they were all injured by the same alleged acts and share a common goal of maximizing recovery. (Pechman Affirmation at ¶ 80.) Moreover, named Plaintiffs have demonstrated their commitment to this litigation by retaining qualified and experienced counsel and spending time litigating this case and participating in settlement negotiations. (*Id.* at ¶ 62, 80.) Thus, the Court finds that named Plaintiffs are adequate representatives. In addition, Class Counsel is experienced in litigating and settling wage-and-hour class action cases and has vigorously litigated this action against qualified defense counsel, reaching a favorable settlement for the Class. (*Id.* at ¶ 62, 66.) Thus, the Court finds that Lead Counsel satisfies Rule 23(a) adequacy requirements.

b. Rule 23(b)(3)

In addition to satisfying the Rule 23(a) requirements, certification must be appropriate under Rule 23(b). *B & R Supermarket, Inc. v. Mastercard Int'l Inc.*, 2021 WL 234550, at *20

(E.D.N.Y. Jan. 19, 2021) (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013)).  "Certification under Rule 23(b)(3) requires both that (1) questions of law or fact common to class members predominate over any questions affecting only individual members, [predominance] and that (2) a class action is superior to other available methods for fairly and efficiently adjudicating the controversy [superiority]."  *Id.* (citing Fed. R. Civ. P. 23(b)(3)) (internal quotation marks omitted).

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Wang v. Tesla, Inc.*, 338 F.R.D. 428, at *441 (E.D.N.Y. 2021) (citing *Amchem Products Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).  "The predominance requirement is satisfied if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof."  *Id.* (citing *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010)) (internal quotation marks omitted).  Plaintiffs need not prove, however, that the legal or factual issues that predominate will be answered in their favor.  *Id.*  With regard to the second prong, to satisfy the superiority requirement, the moving party must show that the class action presents "economies of 'time, effort and expense, and promote[s] uniformity of decision.'"  *In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 130 (2d Cir. 2013).  The superiority requirement is designed to avoid "repetitious litigation and possibility of inconsistent adjudications."  *B & R Supermarket, Inc.,* 2021 WL 234550, at *33 (quoting *In re Air Cargo Shipping Servs. Antitrust Litig.*, 2014 WL 7882100, at *64 (E.D.N.Y. Oct. 15, 2014), *report and recommendation adopted*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015)).

Here, as discussed above, the Class Members suffered the same harm, albeit to

different degrees, because of the same alleged failure by Defendants to properly pay them.

Further, there is no evidence that putative class members desire to bring separate individual

actions, as there were no objections and no opt-outs, and the parties are unaware of any

individual litigation involving the same issues with these parties.  Accordingly, it is desirable to

concentrate the claims in this Court.  Lastly, the request for class certification is only for

purposes of settlement, and therefore the Court need not inquire as to whether the case, if

tried, would present management problems. *See In re AXA Equitable Life Ins. Co. COI Litig.*,

2020 WL 4694172, at *7 (S.D.N.Y. Aug. 13, 2020) (citing *Public Emps.' Ret. Sys. v. Merrill Lynch &*

*Co., Inc.*, 277 F.R.D. 97, 120 (S.D.N.Y. 2011)) (finding superiority where "there is no

overwhelming interest by class members to proceed individually"); *see also Amchem Prods.,*

*Inc.,* 521 U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome

the problem that small recoveries do not provide the incentive for any individual to bring a solo

action prosecuting his or her rights.") (quoting *Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344

(1997)). Thus, the Rule 23(b)(3) factors are met.

I.    <u>The Settlement Is Fair In Light of Rule 23 and the *Grinnell* Factors</u>

Rule 23(e)(2), as amended on December 1, 2018, instructs the Court to determine

whether the Settlement is "fair, reasonable, and adequate" after considering whether:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
     (i) the costs, risks, and delay of trial and appeal;
     (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
     (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
     (iv) any agreement required to be identified under Rule 23(e)(3); and
(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Whether a settlement is "fair, reasonable, and adequate" entails a review of both

procedural and substantive fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85-86 (2d Cir.

2001). "Fairness is determined upon review of both the terms of the stipulation and the

negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174,

184 (W.D.N.Y. 2005).

Prior to the 2018 amendments to Rule 23 pertaining to settlements, courts in the

Second Circuit had long considered whether a settlement was fair, reasonable, and adequate"

under the nine factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974):

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the
> class to the settlement; (3) the stage of the proceedings and the amount of discovery
> completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6)
> the risks of maintaining the class action through the trial; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of reasonableness of the
> settlement fund in light of the best possible recovery; [and] (9) the range of
> reasonableness of the settlement fund to a possible recovery in light of all the attendant
> risks of litigation.

*Id.* at 463, *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d

Cir. 2000). Importantly, "not every factor must weigh in favor of [the] settlement, rather the

court should consider the totality of these factors in light of the particular circumstances." *In re*

*Glob. Crossing*, 225 F.R.D. at 456.

The Advisory Committee Notes to the 2018 amendments to Rule 23 indicate that the

four new Rule 23(e) factors were intended to supplement rather than displace the *Grinnell*

factors. *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2). Accordingly, the Court

considers both sets of factors in its analysis. *See In re GSE Bonds Antitrust Litig.,* 414 F. Supp. 3d

686, 692 (S.D.N.Y. 2019).

Finally, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007).  Notably, "[s]ettlement approval is within the Court's discretion, which 'should be exercised in light of the general judicial policy favoring settlement.'" *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (citation omitted).

      a. <u>Procedural Fairness</u>

As to procedural fairness, a District Court reviewing a proposed settlement must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *D'Amato*, 236 F.3d at 85 (alterations in original) (internal quotation marks omitted).  Accordingly, "[a]bsent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Hall v. ProSource Techs., LLC*, 2016 WL 1555128, at *4 (E.D.N.Y. Apr. 11, 2016) (citing *Massiah v. MetroPlus Health Plan, Inc.*, 2012 WL 5874655, at *2 (E.D.N.Y. Nov. 20, 2012) (internal quotation marks omitted).

Here, as discussed *supra*, Counsel for both sides are experienced in class action litigation, investigated the facts of this case, participated in sufficient discovery to understand facts pertinent to the settlement negotiations, including the taking of depositions, and engaged in motion practice, and several amendments to the complaint which also illuminated the risks of litigation to the parties.  (*See* Motion for Final Approval at 3-4; ECF Nos. 32, 35, 40.)  All of

this supports a finding that counsel and named Plaintiffs were well informed of the risks of litigation and benefits of compromise.  Moreover, the Settlement is the product of arm's length negotiations between the parties' counsels, and the Settlement was reached with the assistance of the undersigned.  (*See* Motion for Final Approval at 8.)  Additionally, notice of the Settlement was widely distributed in both English and Spanish, giving potential class members an opportunity to learn about the case and object to the Settlement.  These facts support the conclusion that this settlement process was procedurally fair and that the "plaintiffs' counsel . . . possessed the experience and ability, and have engaged in the discovery[] necessary to effective representation of the class' interests."  *In re Parking Heaters, Antitrust Litig.*, No. 15MC0940DLIJO, 2019 WL 8137325, at *3 (E.D.N.Y. Aug. 15, 2019) (quoting *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001)).  Therefore, the Court concludes that the settlement was procedurally fair.

  b.  <u>Substantive Fairness</u>

  As to substantive fairness, the Court considers whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C).  Rule 23(e)(2)(C)(i) incorporates the factors set out in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), and courts in this Circuit have long utilized the *Grinnell* nine-factor test in determining whether a settlement is substantively fair, reasonable, and adequate.  *See, e.g.*, *In re Sony Corp. SXRD,* 448 Fed. Appx. 85, 86 (2d Cir. 2011) (summary order).

  The first and third *Grinnell* factors evaluate the complexity, expense, and likely duration of the litigation, the stage of the proceedings and the amount of discovery completed – all of

which favor approval of the proposed settlement. "Class action suits have a well-deserved reputation as being most complex[.]" *Mikhlin v. Oasmia Pharm. AB*, 2021 WL 1259559, at \*5 (E.D.N.Y. Jan. 6, 2021) (internal citations and quotation marks omitted). This case has been going on for over two years and the Court finds that litigation through trial would be complex, expensive, and long. Additionally, the parties have completed enough discovery to recommend settlement. The focus of this factor is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3rd Cir. 2004). The parties' discovery here meets this standard. Class Counsel conducted in-depth interviews with the Plaintiffs to gain information relevant to their claims. Further, all of the most relevant documents have already been produced, including payroll records of Class Members, and CSS' depositions have been taken. (Motion for Final Approval at 11.) Therefore, Class Counsel "had the requisite information to make informed decisions about the relative benefits of litigating or settling." *In re Glob. Crossing Sec.*, 225 F.R.D. at 458.

Based on the above, the Court finds that the first and third *Grinnell* factors weigh in favor of approval of the settlement. *See Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, \*421-22 (S.D.N.Y. 2014).

*Grinnell* factors four and five – the risks of establishing liability and damages also favor the proposed settlement. In considering these factors, the Court need not adjudicate the disputed issues or decide unsettled questions; rather, "the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *In re Global Crossing Sec.*, 225 F.R.D. at 459. Here, Plaintiffs acknowledge there is no guarantee that the evidence will support their claims against Defendants and that they would prevail at trial. (Motion for Final

Approval at 12.)  Further, Plaintiff's Counsel expressed a concern that given the current state of the law on NYLL § 191, after trial, Plaintiffs might not recover any state law penalties, which comprise 65% of the Class Members' damages.  *See, e.g.*, *Nelson Mayors, individually & on behalf of all others similarly situated, v. Port Imperial Ferry Corp.*, No. 24-CV-6815 (RA), 2025 WL 34830 (S.D.N.Y. Jan. 3, 2025) (observing that New York State appellate divisions have recently split on the issue of whether a private right of action exists for violations of NYLL § 191.) Even if the Class did win at trial, the additional delay of trial, any post-trial motions or appeals would further delay the Class any actual recovery for years.  *Bryant v. Potbelly Sandwich Works, LLC*, No. 117CV07638CMHBP, 2020 WL 563804, at *4 (S.D.N.Y. Feb. 4, 2020) ("The proposed settlement 'provides for relief now, not some wholly speculative payment of a hypothetically larger amount years down the road.'") (internal citation omitted).  Thus, *Grinnell* factors four and five support approval of the settlement.

Four of the *Grinnell* factors concern the reaction of the class to the settlement, the risks in maintaining the class action through the trial, and the range of reasonableness of the settlement fund in light of the best possible recovery in light of all of the risks of litigation.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 47-48 (E.D.N.Y. 2019) ("The range of reasonableness of the settlement in light of the best possible recovery, and the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation, are two *Grinnell* factors that are often combined for the purposes of analysis.") After careful review, the Court finds all of these factors favor approving the proposed settlement. Although the parties stipulated to the conditional certification of an FLSA collective action,  "they were by no means guaranteed to maintain that certification at the decertification stage or obtain

class action certification under the more stringent analysis that applies to Rule 23 non-settlement class certification." *Bryant*, 2020 WL 563804, at *4.  Also, the claims of the individual employees are vulnerable to an individualized analysis based on disparities among the employees as well as primary language differences which go to the individual Class Member's ability to understand the wage notices and statements.

"In considering the reasonableness of the settlement fund, a court must compare the terms of the compromise with the likely rewards of litigation."  *In re Payment Card*, 330 F.R.D. at 48 (internal citations omitted).  The range of reasonableness for a settlement is a "range which recognizes the uncertainties of law and fact in any particular case and concomitant risks and costs necessarily inherent in taking any litigation to completion."  *Mikhlin,* 2021 WL 1259559, at *8 (quoting *Wal-Mart*, 396 F.3d at 119) (internal quotation marks omitted).  Here, the parties agreed to the Settlement Amount after working with the undersigned and after negotiations.  The Settlement Amount represents 28% of the Class' highest possible damages assuming a victory on each claim for all Class Members, which weighs strongly in favor of final approval.  *See, e.g.*, *Emeterio v. A&P Rest. Corp.*, No. 20-CV-970 (KHP), 2022 WL 274007 (S.D.N.Y. Jan. 26, 2022) (settlement amount represents 25% of FLSA plaintiff's total damages sought, which is reasonable); *Goldstein v. Mutual of Am. Life Ins. Co.*, No. 22-CV-07862 (S.D.N.Y. Sept. 20, 2023) (ECF No. 71 at 11), approved by ECF No. 77 (S.D.N.Y. Oct. 5, 2023) (requesting and approving settlement that represented approximately 26% of alleged losses).  For the individuals who did not opt out of the settlement, the lowest individual allocation amount is $500 and the highest individual allocation amount is $58,000, depending on the length of time an individual was employed. The allocations represent a substantial and reasonable amount for

Plaintiffs to recover via settlement.

The final *Grinnell* factor – the ability of the defendant to withstand a greater judgment – is neutral.  This factor stands for the proposition that if a defendant would be unable to pay a larger award than what is provided for in the settlement, then the settlement is more likely to be reasonable, fair, and adequate.  *See In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd sub nom., In re PaineWebber Inc. Ltd. Partnerships Litig.*, 117 F.3d 721 (2d Cir. 1997).  Here, while it is possible Defendants could withstand a greater judgment, even if they could, it does not necessarily preclude a finding that the settlement is fair.  *See In re Payment Card*, 330 F.R.D. at 47 (citing *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012)).  On balance, the *Grinnell* factors weigh in favor of approval of the settlement.

    c.  <u>Remaining Rule 23(e) Factor</u>

With regard to the remaining 23(e) factors, the costs, risks, and delay of trial and appeal favor approval of the settlement agreement.  As discussed above, this case has been pending for over two years.  Relatedly, were this case to proceed to trial, Plaintiffs may be unsuccessful in proving liability or recovering state law penalties, as detailed above.  A settlement avoids all of these risks and the delay associated with further litigation, providing immediate relief to the class (albeit at a fraction of their total alleged damages).  Avoidance of the costs, risks and time involved in further litigation support approval of the settlement.

The Court also considers the proposed allocation plan for distributing the Settlement Amount to the class members.  *See* Fed. R. Civ. P. 23(e)(2)(C)(ii).  "To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized — namely,

it must be fair and adequate . . . [a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Id.* (citing *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005) (internal citations and quotation marks omitted); *see also In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 180 (S.D.N.Y. 2014) ("When formulated by competent and experienced class counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis") (internal citations omitted). Here, the plan of allocation distributes the settlement proceeds on a pro rata basis to class members based on their dates of employment and wage rates and was agreed upon by counsel on both sides. It provides recovery to Class members, net of administrative expenses and attorneys' fees and costs, on a pro rata basis. The proposed plan of allocation also provides for the appointment of a claims administrator, who will perform the allocation calculation described in the plan of allocation. (Proposed Settlement Agreement at ¶ 1.27.) In addition, Class Members who do not timely return an opt-out statement will automatically be issued a settlement check by the Claims Administrator. This methodology is appropriate, and consistent with prior cases, and therefore, the Court approves it.

    d. <u>Attorneys' Fees, Administrative Expenses and Costs</u>

  The Court next addresses attorneys' fees that will be paid from the settlement. *See* Rule 23(e)(C)(iii). Class Counsel requests that the Court approve the proposed award of attorneys' fees in the amount of 1/3 of the Settlement Amount (i.e. $600,000), plus litigation expenses of $5,149.75. Further, Class Counsel requests that the Court approve an award of administrative expenses in the amount of $17,802 to be paid to the Claims Administrator, Rust Consulting, Inc. The Court has reviewed the documents in support of their request for attorney's fees and costs.

For the reasons discussed below, the Court grants the Motion for Attorneys' Fees in its entirety.

i. *Attorneys' Fees*

"In a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "Both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees . . ." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000).

"The trend in this circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation." *In re Parking Heaters,* 2019 WL 8137325, at *7 (quoting *Wal-Mart*, 396 F.3d at 121) (internal quotation marks omitted). A court applying either the percentage or lodestar method should consider the following *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Id.* (citing *Goldberger*, 209 F.3d at 50).

Plaintiffs seek fees equal to one-third of the settlement fund. Courts in this Circuit routinely find that a percentage of fund award is appropriate and that a one-third percentage is fair and reasonable. *See, e.g., Moloney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the settlement fund is typical in class action settlements in the Second Circuit."); *Anwar v. Fairfield Greenwich Ltd.*, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations"); *Puddu v. 6D*

*Glob. Techs., Inc.,* 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (awarding attorney's fees in the amount of one-third (33.3%) of the settlement fund is within the range for rates in this district and thus reasonable). Thus, Class Counsel's request for fees amounting to a third of the total settlement are reasonable.

The claimed fees are also reasonable under the lodestar method. In this case, Plaintiffs' counsel attests that a total of approximately 760 hours were spent working on this litigation. (Pechman Affirmation at ¶ 74.) As the Court stated *supra*, Class Counsel in this case is experienced in complex wage and hour class action cases. The time and labor expended by Class Counsel is supported by time records and reasonable considering the procedural posture of this case, which has been pending for over two years, and the advocacy needed to amend the complaint multiple times and negotiate an advantageous settlement for the class, the complexity of the case and uncertainty of the outcome, as discussed above. (*Id.* at ¶¶ 74-76.) The hours spent, multiplied against counsels' rates result in a total lodestar amount of $319,045.00. (*Id.* at ¶ 74.) This results in a lodestar multiplier of 1.88. This lodestar cross-check demonstrates that the percentage of the fund sought for attorneys' fees is reasonable. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d, 424, 435 (S.D.N.Y. 2014) (finding that "a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases").

Therefore, in light of the Goldberg factors, the Court finds the attorneys' fee award requested to be fair and reasonable. *See Goldberger v. Integrated Res. Inc.*, 209 F.3d 43, 48-49 (2d Cir. 2000); *Sukhnandan v. Royal Health Care of Long Island LLC*, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014) ("Reasonableness is the touchstone" of attorneys' fee award approval;

applying the Goldberger factors).  In sum, for the reasons discussed above, Class Counsel's application for attorneys' fees in the amount of 33 1/3% of the settlement fund is granted.

ii.        _Costs and Administrative Expenses_

Class Counsel requests an award of $5,149.75 in costs. (Pechman Affirmation at ¶ 77.) "Courts routinely note that counsel is entitled to reimbursement . . . for reasonable litigation expenses." _Anwar v. Fairfield Greenwich Ltd._, 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (citing _Reichman v. Bonsignore, Brignati & Mazzotta, P.C.,_ 818 F.2d 278, 283 (2d Cir. 1987)).  In this case, Class Counsel submitted an affirmation which itemizes counsel's expenses incurred in this action, including filing fees, court reporter and interpreter fees and costs of mailing collective action notices —all reasonable expenditures in this type of action.  (Pechman Affirmation at ¶ 77.)  Accordingly, the Court grants the motion for costs in the amount of $5,149.75.  _See Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm._, 504 F. Supp. 3d 265, 272 (S.D.N.Y. 2020) (granting reimbursement of costs for experts' fees, travel, mediation fees, and photocopying costs); _Emeterio_, 2022 WL 274007, at *10 (granting $8,481.19 in costs for filing fees, service fees, notice printing and mailing fees, deposition and translation fees, travel expenses, and fees related to mediation.)

Plaintiffs also request reimbursement of administrative expenses in the amount of $17,802, which are to be deducted from the Settlement Amount. The Court finds this amount to be reasonable and within the range charged by settlement administrators in similar cases and therefore approves these expenses and orders that $17,802 be deducted from the Settlement Amount. _See Flores v. CGI Inc_., No. 22-CV-350 (KHP), 2022 WL 13804077 (S.D.N.Y.

Oct. 21, 2022); *Moreno v. Deutsche Bank Americas Holding Corp.*, No. 15 CIV. 9936 (LGS), 2019 WL 13525007 (S.D.N.Y. Mar. 7, 2019).

    e.  <u>Incentive Awards</u>

Class Counsel asks the Court to approve service awards for the named Plaintiffs, in the amount of $15,000 for Cruz Guerrero and $10,000 for Ramirez Morel.  Incentive awards "are common in class action cases and are important to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs." *Hernandez v. Immortal Rise, Inc.*, 306 F.R.D. 91, 101 (E.D.N.Y. 2015) (internal quotation marks and citation omitted); *see also Dornberger v. Metro. Life Ins. Co.*, 203 F.R.D. 118, 124 (S.D.N.Y. 2001) ("An incentive award is meant to compensate the named plaintiff for any personal risk incurred by the individual or any additional effort expended by the individual for the benefit of the lawsuit.").

The Motion for Final Approval details the named Plaintiffs' efforts in this action. (Motion for Final Approval at 16.)  For example, the named Plaintiffs provided information to Class Counsel to inform the complaint, provided their own records, and attended and participated in mediation.  Recognition payments are "particularly appropriate in the employment context." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005). When, as here, the plaintiffs are "former or current employee[s] of the defendant ... by lending [their] name to the litigation, [they have], for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers." *Id.*; *see also Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired

may be worthy of receiving an additional payment, lest others be dissuaded."). Further, there have been no objections to the proposed service awards, indicating the named Plaintiffs adequately represented the class. The different amounts of the proposed service awards reflect the increased amount of effort and risk expended by the named Plaintiffs, and, in light of the total Settlement Amount, are fair and reasonable. The incentive awards requested also are in line with others awarded in this Circuit. *See Flores*, 2022 WL 13804077 (awarding an incentive award of $15,000 for named plaintiffs); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12CV4216 RLE, 2014 WL 3778173, at *16 (S.D.N.Y. July 31, 2014) (awarding an incentive award of $10,000 for named plaintiffs). Therefore, the Court grants the requests for service awards for the named Plaintiffs, in the amount of $15,000 for Cruz Guerrero and $10,000 for Ramirez Morel.

<u>**CONCLUSION**</u>

For all the above reasons, the Motion for Final Approval (ECF No. 99) is GRANTED. **The Clerk of Court is respectfully directed to terminate the motion at ECF No. 99 and close the case.**

**SO ORDERED.**

Dated: January 15, 2025
New York, New York

_____
KATHARINE H. PARKER
United States Magistrate Judge